IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE DALIE, | CIVIL ACTION |
| Plaintiff, | |
| | NO. 07-2097 |
| v. | |
| CORRECTIONAL OFFICER | |
| CORY VOSS, et al., | |
| Defendants. | |

FILED
SEP 28 2010

## MEMORANDUM

**Jones, II, J.**                                                       **September 28, 2010**

This civil rights action arises out of an assault and related disciplinary hearing involving Plaintiff George Dalie, which occurred while he was held in pretrial detention at Chester County Prison. Plaintiff brings suit against Defendants for violating his substantive and procedural due process rights, first by failing to protect him from attack by another inmate and then by subjecting him to improper disciplinary proceedings and punishment relating to that altercation.

Before the Court are (1) Defendants' Motion for Summary Judgment, which incorporates Defendants' Statement of Facts ("Def. SOF"), and Brief in Support of said Motion ("Defs. Mem.") (collectively, Dkt. No. 30); (2) Plaintiff's Memorandum of Law in Opposition to said Motion ("Pl. Mem."), as well as Plaintiff's Response to Defendants' Statement of Facts ("Pl. Opp. to Def. SOF") and Plaintiff's Statement of Undisputed and Disputed Material Facts ("Pl. SOF") (collectively, Dkt. No. 40); and (3) Defendants' Response to Plaintiff's Statement of Undisputed and Disputed Material Facts ("Defs. Opp. to Pl. SOF") (Dkt. No. 43). For the reasons set forth below, Defendants' Motion will be DENIED.

I. **PROCEDURAL BACKGROUND**

On June 14, 2007, Plaintiff filed his Complaint *pro se*, asserting various violations of his constitutional rights against Correctional Officer Corey Voss, Sergeant Mastnjak, Sergeant English, Counselor Rogevich, Lieutenant Forbbs, Warden McFadden, Captain Miller, Captain Taylor, Captain Foriena, Captain Wilson and Captain Walker (Dkt. No. 5). All Defendants filed a joint Motion to Dismiss (Dkt. No. 9), and on December 4, 2007, the Honorable Gene E.K. Pratter granted that Motion as to all of Plaintiff's claims under the Eighth Amendment and as to his claims under 42 U.S.C. § 1983 based on the negligence of Defendants Miller, Walker, Taylor, Wilson and Foriena (Dkt. No. 17). Defendants answered Plaintiff's surviving 14th Amendment claims against Defendants Voss, Mastnjak, English, Rogevich, Forbbs and McFadden on December 18, 2007 (Dkt. No. 18).

Following several discovery disputes (Dkt Nos. 26, 27 and 29), since resolved (Dkt. Nos. 28 and 35), the remaining Defendants filed their Motion for Summary Judgment, supporting Brief and Statement of Facts regarding the outstanding claims on August 29, 2008. On November 17, 2008, this case was reassigned to my docket (Dkt. No. 31) and on August 14, 2009, Plaintiff's counsel entered their appearance pursuant to Judge Pratter's earlier appointment (Dkt. Nos. 23 and 32). After a Court-approved stipulation for additional time to respond, Plaintiff filed his factual and legal opposition to Defendants' Motion for Summary Judgment on December 7, 2009. On August 27, 2010, Defendants filed their response to Plaintiff's factual opposition.

## II. FACTUAL ALLEGATIONS[1]

On the afternoon of July 19, 2006, Plaintiff was a pre-trial detainee confined to the Restricted Housing Unit at the Chester County Prison ("Prison"), classified as a Custody Level 5 inmate. (Compl. ¶ 1). At that time Christian Baker was also confined to the Restricted Housing Unit; Baker was classified as a Custody Level 7 inmate. (Ex. A to Pl. Opp. to Def. SOF, Trial Testimony of Corey Voss ("Voss Test.") 29:25-30:6, 30:22-31:3, 33:11-25.) Custody Level 7 inmates are to be kept in administrative isolation, which is reserved for violent offenders who have exhibited extremely disruptive behavior or assaultive behavior and are considered to be a threat to themselves and/or others. (Ex. B to Pl. SOF, Chester County Prison Policy Manual ("Prison Manual"), Classification & Custody Levels at 8.)[2] Custody Level 7 inmates are to be fed meals in their cells, while Custody Level 5 inmates may eat in the dayroom among other inmates. (Ex. C to Pl. SOF, Chester County Prison Interoffice Memorandum ("Interoffice Mem."); Ex. D to Pl. SOF, Preliminary Hearing Testimony of Corey Voss ("Voss Prelim. Hr'g Test.") 9:4-6; Voss Test. 33:11-19, 70:21:23.) The Prison Manual states that

> [o]fficers must be alert at all times to detect any unusual action or conduct by an inmate that might indicate an inmate is an unusual security risk . . . or a strong hatred of another inmate. Any observations of this nature must be reported to the Sergeant in charge, and a written Incident Report must be submitted before going off duty.

(Ex. K to Pl. SOF, Chester County Prison Policy Manual, General Personnel Orders at 2.) The Prison Manual further states that "[o]fficers in charge of cell blocks, or assisting, will ensure that regulations concerning those areas are carried out." (*Id.*)

---

[1] Unless indicated otherwise, the facts below are undisputed.

[2] An inmate may also be placed in the Restrictive Housing Unit for violation of Prison rules. (Voss Test. 30:5-10.)

Baker had been housed for some time with Louis Mouratdis in cell K-32, who was classified as a Custody Level 5 inmate. (Witness Request Form by George Dalie ("Dalie Form"); Voss Prelim. Hr'g 9:8-9; Ex. E to Pl. Opp. to Def. SOF, Prison Incident Citation 012252 ("Citation"); Voss Test. 33:11-25.)³ At that time, Defendant Voss was assigned as a block officer in charge of the Restricted Housing Unit and knew that Baker was housed with Mouratdis. (Voss Test. 30:1-6, 33:11-25; Citation; Ex. F to Pl. Opp. to Def. SOF, Chester County Detectives Statement Form by Corey Voss ("Voss Detectives Statement") at 2.) Defendant Voss' superiors, Defendants Sergeant Mastnjak, Sergeant English, Counselor Rogevich, and Lieutenant Forbbs, were also aware that Baker was housed with Mouratdis. (Compl. ¶ 26; Answer ¶ 26; Pl. SOF ¶ 11; Defs. Opp. to Pl. SOF ¶ 11.); it is unclear as to whether Defendant Warden McFadden was in fact aware of these housing circumstances.⁴

In the two days leading up to July 19, 2006, Baker had been arguing with his entire cell block. (Ex. G to Pl. Opp. to Def. SOF, Trial Testimony of Christian Baker ("Baker Test.") 58:17-18, 60:4-7; Ex. J to Pl. Opp. to Def. SOF, Chester County Detectives Statement Form by Christian Baker ("Baker Detectives Statement"); Voss Detectives Statement at 8.) Inmates John Gonce and James Cuffie witnessed him "yelling" at and "threatening" Plaintiff. (Ex. H to Pl. Opp. to Def. SOF, Prison Witness Request Form by John Gonce ("Gonce Form"); Ex. I to Pl. Opp. to Def. SOF, Prison Witness Request Form by James Cuffie ("Cuffie Form").) Inmate

---

³While Defendants provided the Court with copies of the records they cite in support of their Motion for Summary Judgment, they failed to identify any of these records as individual exhibits nor cite them as such. Accordingly, the Court does not refer to any particular exhibit number or letter when citing Defendants' supporting documentation.

⁴Defendants contend that Warden McFadden "would not have knowledge of an individual inmate[']s housing situation." (Def. Opp. to Pl. SOF ¶ 11.)

Thomas Kristman heard Plaintiff state that Baker "was a snitch and he was going to get it" for reporting another inmate to the correctional officer on duty for throwing an unidentified bodily fluid on Baker, and otherwise employ abusive and threatening language against Baker. (Witness Request Form by Tom Kristman ("Kristman Form"); Trial Testimony of Thomas Kristman ("Kristman Test.") 3:15-17; 5:19-6:23).) Baker himself, however, did not recall Plaintiff saying anything to him that day. (Baker Test. 60:4-10.) Up to that point, Plaintiff had "never had a problem" with Baker and did not even know his name. (Dalie Form.) Defendant Voss had been aware of other inmates' complaints that Baker was noisy; several unidentified inmates had been yelling obscenities at Baker the day before the incident in an effort to provoke him. (Voss Detectives Statement at 7-8; Baker Test. 58:12-20.)[5]

Sometime between 4:00 and 4:30 p.m. on July 19, 2006, Plaintiff entered the dayroom for dinner. (Gonce Form; Cuffie Form.) At the same time, Defendant Voss was opening the gates to the other Custody Level 5 inmates' cells to allow them into the dayroom as well. (Voss Test. 29:25-30:6, 30:16-19, 32:18-20.) Defendant Voss opened the gate to the cell shared by Baker and Mouratdis to allow Mouratdis to come out for dinner. (Voss Test. 32:18-20, 33:20-25; Citation.) Defendant Voss informed Baker that as a Custody Level 7 inmate, Baker was not supposed to exit his Prison cell. (Voss Detectives Statement at 2.)[6] However, when Defendant

---

[5]While Plaintiff cites other inmates' testimony in support of his position that Defendant Voss had prior knowledge that there would be a violent incident on July 19, 2006, the cited testimony indicates only that those inmates witnessed or took part in arguments and exchanges of obscenities with Baker the day before the fight, not that Defendant Voss was present for or aware of those arguments and exchanges. (Pl. Opp. to Def. SOF ¶ 15 (citing Baker Detectives Statement at 2; Gonce Form; Cuffie Form).)

[6]While Plaintiff disputes that Defendant Voss instructed Baker to remain in his cell, he provides no record support for his position. (Pl. Opp. to Def. SOF ¶ 14.)

5

Voss opened the cell to allow Mouratdis to exit, Baker ran out into the dayroom toward Plaintiff in an aggressive manner. (Voss Detectives Statement at 2; Voss Test. 34:24-35:9.)[7]

Defendant Voss later testified at trial that prior to Baker's charge, Plaintiff had exited his own cell into the dayroom with his meal tray in hand, placed his meal tray on a picnic table, and then walked across the block dayroom to Baker's cell. (Citation; Voss Test. 34:3-7.)[8] However, in a report made several days after the incident, Defendant Voss stated that "[a]fter Baker came out [of his cell], [h]e went around the picnic style tables and went over toward inmate George Dalie who was coming out from his cell for chow. Dalie had his tray in his hand but put it down when Baker came toward him." (Voss Detectives Statement at 3.) Indeed, Gonce and Cuffie testified that Plaintiff did not cross the block dayroom to Baker's cell after putting down his meal tray but instead merely proceeded to the next table, where he put his foot up on the table bench and adjusted his footwear, at which point Baker approached him. (Ex. L to Pl. Opp. to Def. SOF, Trial Testimony of John Gonce ("Gonce Test.") 86:12-87:4; Gonce Form; Cuffie Form.) In other words, Defendants contend the aggressor in this incident was Plaintiff (Baker Detectives Statement; Kristman Test. 7:4-9, 15:1-23), while Plaintiff maintains that the aggressor was Baker. (Gonce Test. 81:20-83:5; Gonce Form; Cuffie Form.)

According to Gonce and Cuffie, as well as Baker himself, after Baker charged Plaintiff, Baker swung at least one punch at Plaintiff, which resulted in some contact with Plaintiff's left

---

[7]Baker is six feet tall and weights 150 pounds; Plaintiff is six feet, seven inches tall and weighs 315 pounds. (Search Criteria for Christian Baker; Search Criteria for George Dalie).

[8]In May 2007, Plaintiff went to trial on aggravated assault charges in the Chester County Court of Common Pleas with regard to the July 19, 2006 Prison fight. "Trial testimony" cited in this opinion refers to testimony from that May 2007 trial.

6

shoulder and/or chest. (Compl. ¶¶ 1, 5, 8; Ex. G to Pl. Opp. to Def. SOF, Trial Testimony of Christian Baker ("Baker Test.") 58:24-59:10, 68:4-22; Gonce Test. 81:20-83:5; Gonce Form; Cuffie Form.) Defendant Voss, however, testified that he saw Baker approach Plaintiff with his arms up, but never saw Baker actually swing. (Voss Test. 35: 7-12; Voss Detectives Statement at 7.) Kristman also stated that he never saw Baker hit Plaintiff. (Kristman Test. 13:13-15.) In any event, Plaintiff responded by striking Baker two or three times; Baker fell to the ground. (Compl. ¶¶ 16, 18; Voss Test. 36:2-6; Voss Detectives Statement at 3.) It is unclear if Baker hit his head on a nearby water fountain as he fell. (Gonce Test. 83:1-3.)

Defendant Voss testified that Plaintiff then punched Baker an additional 10 to 12 times, rendering Baker unconscious (Voss Test. 35:13-26:21; Voss Detectives Statement at 3.) Gonce, however, stated that after Baker fell, Plaintiff walked away from Baker and headed for Plaintiff's cell. (Gonce Test. 83: 6-9.) Baker himself recalled only being hit three times by Plaintiff. (Ex. P to Pl. SOF, Preliminary Hearing Testimony of Christian Baker ("Baker Prelim. Hr'g") 54:1-6; Baker Test. 58:24-25.). Kristman testified that Plaintiff then instructed the other inmates present that Baker had instigated the fight and that the inmates had "better stick to that." (Kristman Test. 12:19-24). Gonce denied that Plaintiff issued any such instruction. (Gonce Test. 85:19-21.)

Defendants allege that Plaintiff refused to listen to verbal commands from Defendant Voss (Citation); Gonce and Cuffie testified that at no point did they hear Defendants Voss tell either Baker or Plaintiff to cease fighting or return to their cells. (Gonce Form; Cuffie Form.) However, Defendant Voss did call the Prison's emergency line, which connected directly with the Prison's control room; his lieutenant officer then called a "code four," which refers to an "inmate-on-inmate fight," requiring all available officers to respond. (Voss Test. 41:1-7; Voss

7

Detectives Statement at 4; Kristman Test. 12:9-17).[9] Defendant Voss remained in the Prison control room. (Voss Test. 80:23-8.)[10] Indeed, Defendant Voss did not see whether Baker hit his head on the nearby water fountain when he fell after being struck by Plaintiff, as Gonce believed may have happened (Gonce Test. 83:1-3); while Defendant Voss was "paying attention generally to what was going on," he was "running from [Baker] to the sally port to let the officers" know of the current situation and was "on a phone line standing in this direction with my control panel here and I'm going from them to the door, them to the door, them to the door." (Voss Test. 73:11-74:5.) Defendant Voss admitted that he "couldn't say" if Baker in fact broke his jaw from banging his head on the water fountain during his fall or from a punch from Plaintiff. (*Id.* 74:6-11.)

Following the attack, Defendants English and Mastnjak responded to the incident; Plaintiff was ultimately placed in handcuffs and interviewed by Defendant Mastnjak. (Ex. M to Pl. SOF, Chester County Disciplinary Board Appeal Form dated July 24, 2006 ("Appeal Form"); Compl. ¶ 19; Answer ¶ 19.)[11] Plaintiff was then transferred to punitive isolation. (Compl. ¶ 24; Answer ¶ 24.) He was cited by Defendant Voss for causing a disturbance, interfering with an

---

[9]Plaintiff disputes Defendant's characterization of Defendant Voss' response to the altercation as "immediate," however. (Pl. Opp. to Def. SOF ¶ 8.)

[10]Plaintiff admits that Defendant Voss stayed in the control room but deny that this was in conformity with Prison policy, as contended by Defendants. (Pl. Opp. to Def. SOF ¶ 9; Def. SOF ¶ 9 (citing Voss Test. 81:2-8).)

[11]Defendants deny that Defendant English placed Plaintiff in handcuffs, but admit that "after the incident, Plaintiff was placed in cuffs and interviewed by Defendant Mastnjak." (Answer ¶ 19.) While Defendants contend that Defendant English was "not directly involved in the incident" and "did not effectively handle the Baker and Dalie incident directly," they do not contest that Defendant English did in fact respond to the altercation. (Appeal Form.)

8

officer's duties, and fighting; the citation was reviewed and approved by Defendant Mastnjak. (Compl. ¶ 25; Answer ¶ 25.) Plaintiff was placed in pre-hearing confinement as of the evening of the fight. (Ex. N to Pl. SOF, Chester County Prison Disciplinary Hearing Disposition dated July 21, 2006.)

Immediately following the attack neither Defendant Voss nor inmate Kristman noticed any injury to Plaintiff. (Voss Test. 44:23-24; Kristman Test. 24:23-24.) Although Defendants argue that Baker did not inflict any injury to Plaintiff, Prison medical records do note that Plaintiff complained of wrist pain immediately after the fight and "there was a lump on [his] lower forearm." (Dispensary Card for George Dalie ("Dalie Dispensary Card").) Two days later, Plaintiff was experiencing pain and swelling in the "lateral aspect of [his] wrist." (*Id.*) While Plaintiff also complained of ear pain, with pus and blood coming from his ear, the medical staff saw no signs of bleeding or pus at that time. (*Id.*)[12]

Two days later, a disciplinary hearing was held, presided over by Defendants English, Rogevich and Forbbs. (Compl. ¶ 27; Answer ¶ 27.) The Prison Manual provides that "[t]he Disciplinary Board is a panel consisting of three staff members representing both the Security and Treatment departments. No member of the board will have been involved in the incident to insure [sic] impartiality." (Ex. O to Pl. SOF, Chester County Prison Policy Manual, Inmate Discipline ("Prison Manual, Inmate Discipline") at 2.) At the disciplinary hearing, Plaintiff informed Defendants English, Rogevich and Forbbs that he was attacked by Baker, that Defendant Voss' incident citation was fabricated, and that Plaintiff had witnesses to prove it.

---

[12]Plaintiff claims that he also suffered "a puncture wound...sore neck and shoulder" (Compl. ¶ 22), but no records support these additional allegations. (Dalie Dispensary Card.)

9

(Compl. ¶ 28.)[13]

At the conclusion of the disciplinary hearing, Plaintiff was found guilty of causing a disturbance, interfering with an officer's duties, and fighting, and was sanctioned to 70 days of punitive isolation. (Compl. ¶ 27; Answer ¶ 27.) Plaintiff appealed the findings of Defendants English, Rogevich and Forbbs to Defendant Taylor, who denied his appeal. (Compl. ¶ 29; Answer ¶ 29.) Defendant McFadden approved Defendant Taylor's denial of Plaintiff's appeal. (Compl. ¶ 29; Answer ¶ 29.)

### III. LEGAL STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

---

[13]In their Answer, Defendants admit that Plaintiff told the hearing board that he was assaulted by Baker, but deny that he told the board that Defendant Voss fabricated his report. (Answer ¶ 28.) In response to Plaintiff's opposition to Defendant's summary judgment motion, however, Defendants "admit[] that Plaintiff makes such claims" and do not contest that Plaintiff informed the board that Defendant Voss' incident report was fabricated. (Def. Opp. to Pl. SOF ¶ 29.)

10

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## IV. DISCUSSION

### A. Plaintiff's Substantive Due Process Claims

Plaintiff alleges that Defendants violated his 14th Amendment substantive due process rights by failing to protect him from Baker's attack. "Pretrial detainees asserting a constitutional violation based on non-medical conditions of their confinement must prove that prison officials acted with deliberate indifference and that the prisoner suffered a deprivation of the minimal civilized measure of life's necessities." *Lassiter v. Buskirk*, No. 03-5511, 2006 WL 1737180, at *3 (E.D. Pa. Jun. 22, 2006) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (internal quotation omitted)). Negligence is not enough; a "lack of due care by an official that results in unintended injury does not implicate an injury to life, liberty or property that is actionable under the Due Process Clause." *Lassiter*, 2006 WL 1737180 at *3 (citing *Davidson v. Cannon*, 474 U.S. 344, 347 (1986)).

Where a prisoner is attacked by another prisoner, he may prevail on his Section 1983 claims only "if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." *Davidson v. O'Lone*, 752 F.2d 817, 828 (3d Cir. 1984). A supervisory prison official is liable for his own deliberate indifference to

11

the violation of a prisoner's civil rights where the official had knowledge of unconstitutional practices promulgated against the prisoner and the official failed to act on that knowledge. *See Sample v. Diecks*, 885 F. 2d 1099, 1118 (3d Cir. 1989); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995) (denying police supervisor's summary judgment motion where sufficient evidence existed as to supervisor's actual knowledge of and acquiescence to subordinates' use of excessive force). The threshold question "'is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Eichelman v. Lancaster County*, 510 F. Supp. 2d 377, 389 (E.D. Pa. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Defendants insist that there is no evidence that any prison official had any knowledge from which he could reasonably infer that Baker would attack Plaintiff, arguing that "Plaintiff's own statement indicates that he had no such knowledge" and that "Officer Voss stated that he had no such knowledge." Defs. Mem. at 10. However, as Plaintiff notes, a reasonable jury could find that Defendants knew or should have known that Custody Level 7 inmate Baker was housed with Custody Level 5 inmate Mouratdis, that this arrangement violated Prison policy regarding classification and custody levels, and that this arrangement left Plaintiff likely to be assaulted under the circumstances, as it allowed Baker to escape his cell and head for Plaintiff in the dayroom when Defendant Voss opened the shared cell to allow Mouratdis to exit for dinner.[14]

---

[14]Defendants admit that Defendants Mastnjak, English, Rogevich and Forbbs were all aware that Baker was housed with Mouratdis. Their contention that Defendant McFadden "would not have knowledge of an individual inmate's housing situation" is unsupported by any record evidence and does not explicitly deny Defendant McFadden's knowledge; the question remains for a jury to determine whether Warden McFadden did in fact know that Baker was housed with Mouratdis. (Compl. ¶ 26; Answer ¶ 26; Pl. SOF ¶ 11; Defs. Opp. to Pl. SOF ¶ 11.)

Furthermore, while the parties dispute whether Defendant Voss in fact instructed Baker to remain in his cell when Defendant Voss opened the cell for Mouratdis, even if Defendant Voss did issue such a directive, jurors could find that his instructions merely highlighted Defendants' awareness of the danger involved at that moment.

Aside from (or in conjunction with) any danger incurred by Defendants as a result of housing Baker with Mouratdis, a reasonable jury could also conclude that Defendant Voss was aware of Baker's threatening behavior leading up to the altercation on July 19, 2006 and that the threats involved were obvious and specific enough to present risk to Plaintiff's safety. Plaintiff's statement that he had "never had a problem" with Baker and did not even know Baker's name does not mean that Defendant Voss could not have been aware of any threat from Baker against Plaintiff on the day of the prison fight, or even that Plaintiff himself had no such knowledge earlier on that particular day. Furthermore, even if Plaintiff threatened Baker, that fact would not preclude the possibility that Baker threatened Plaintiff as well, and that Defendant Voss had knowledge of those threats. Inmates Gonce and Cuffie testified that for two days before the confrontation, Baker had been arguing with various inmates on his floor; inmate Kristman testified that Plaintiff had vowed to retaliate against Baker for an alleged prior aggression. Under either scenario, jurors could find that Defendant Voss was aware of the verbal threats supposedly issued by Baker *or* Plaintiffs such that Defendant Voss' failure to follow up on those threats was recklessly or deliberately indifferent to Plaintiff's physical safety. *See Eichelman*, 510 F. Supp. 2d at 391 (genuine issue of material fact existed as to whether corrections officer acted with deliberate indifference to detainee's safety when, knowing that detainee was not in protective custody but rather was in the general population among violent offenders with whom he would

13

have contact and was housed in a cell furthest from the guard post, he informed inmates of the arrival of detainee charged with shooting incident involving a two-year old boy); *Wade v. Haynes*, 663 F.2d 778, 780-81 (8th Cir. 1981) (whether correctional officer knew or should have known that young prisoner, small in stature, was likely to be assaulted when placed in administrative segregation unit with another prisoner, despite recommendation that he be separated from the general population for his own safety and that of others, was question for the jury). On this record, there is sufficient evidence from which a jury could find that Defendants acted with deliberate indifference to the risk of harm to Plaintiff and that their actions satisfied the 14th Amendment's "shocks the conscience" standard. *See Eichelman*, 510 F. Supp. 2d at 392.[15]

### B. Plaintiff's Procedural Due Process Claims

#### *1. Hearing and Isolation as Punishment*

Plaintiff also claims that Defendants violated his 14th Amendment procedural due process rights. Defendants seem to understand Plaintiff's claim as an objection to his pre-hearing confinement, to the finding of his guilt regarding the July 19, 2006 assault following a disciplinary hearing, and to the prohibition on his cross-examination of any witness during that hearing. *See* Defs. Mem. at 10. Accordingly, Defendants focus their summary judgment arguments on their alleged compliance with the requirements set forth by the Supreme Court for

---

[15]The Court notes that Defendants do not invoke the doctrine of qualified immunity as a defense to the claims brought against them in their individual capacities, and do not cite any evidence in support of any such defense. Accordingly, the Court finds that Defendants have not met the burden, at this stage of the litigation, to show that they are entitled to qualified immunity as to the failure to protect claim against them in their individual capacities. *Cf. Eichelman*, 510 F. Supp. 2d at 392.

14

pre-hearing confinement of a prisoner and Plaintiff's subsequent restricted confinement, but do not address the details of Plaintiff's actual administrative hearing. *See* Defs. Mem. at 10-12 (citing *Hewitt v. Helms*, 459 U.S. 460 (1983) and *Sandin v. Conner*, 515 U.S. 472 (1995)).

Plaintiff, however, argues that his procedural due process rights were in fact violated by Defendants' pretrial restriction of 70 days' isolation following a fatally flawed hearing regarding the prison fight. *See* Pl. Mem. at 11-13. Plaintiff notes that Defendants rely on caselaw addressing the due process claims of convicted inmates, not pretrial detainees such as Plaintiff.[16]

Indeed, pretrial detainees face a different standard:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against the deprivation of liberty without due process of law, we think the proper inquiry is whether those conditions amount to punishment of the detainee.

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee "'may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Fuentes v. Wagner*, 206 F.3d 335, 342 (3d Cir. 2000) (quoting *Bell*, 441 U.S. at 535). As maintaining "'security and order at the institution is a permissible non-punitive objective,'" whether a prison's "'restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive government purpose and whether they appear excessive in relation to that purpose.'" *Fuentes*, 206 F.3d at 342 (quoting *Bell*, 441 U.S. at 561). In other words, there is a "'distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may.'" *Fuentes*, 206 F.3d at 342 (quoting *Bell*, 441 U.S. at 561).

---

[16]Defendants admit that Plaintiff was a pretrial detainee at the time of the July 19, 2006 incident. (Compl. ¶ 1; Answer ¶ 1.)

15

Thus we must determine whether Plaintiff's disciplinary hearing and subsequent confinement were imposed for a legitimate government purpose, or were imposed for the purpose of punishment:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Fuentes*, 206 F.3d at 342 (quoting *Bell*, 441 U.S. at 538-39). At the very least, there exists a genuine dispute of material fact as to whether Plaintiff's disciplinary hearing and resulting 70 days' isolation were intended to punish Plaintiff for his role in the July 19, 2006 altercation, or simply to remove him from the general prison population for safety reasons. The Court notes that Defendants themselves admit that Plaintiff's confinement was for "*punitive* isolation" (emphasis added). (Compl. ¶ 27; Answer ¶ 27.) *See Fuentes*, 206 F.3d at 343 (whether inmate was placed in restraint chair to stop his disruptive behavior and maintain prison order and security, or for purposes of punishment without procedural due process, was a jury question).

### 2. Hearing Procedures

Aside from the question of whether Defendants unconstitutionally punished Plaintiff for the prison fight, Plaintiff contends that his rights were violated because the disciplinary hearing that led to his isolated confinement itself failed to meet due process requirements. *See* Pl. Mem. at 12. A disciplinary hearing entitles a prison to: "1) an impartial decision-making body; 2) twenty-four hour advance notice of the charges; 3) an opportunity to call witnesses and present

16

documentary evidence; 4) assistance from a representative; and 5) a written decision explaining the evidence relied upon." *Pachtinger v. Grondolsky*, 340 Fed. App'x 774, 776 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974)). Furthermore, "[a] prison disciplinary determination comports with due process if it is based on 'some evidence.'" *Pachtinger*, 340 Fed. App'x at 777 (quoting *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-56 (1985)).

Here Plaintiff does not claim that he was denied notice of the charges against him, lacked the opportunity to call witnesses or present evidence at his hearing, had no assistance from a representative or failed to receive a written decision explaining his guilty finding. He does, however, argue that the prison disciplinary board that found him guilty of assault on Baker was not in fact impartial. *See* Pl. Mem. at 12-13. Plaintiff has presented evidence that Defendant English responded to Defendant Voss' call for back-up in the aftermath of the July 19, 2006 fight, investigated the incident, and then sat on the decision-making body that adjudicated Plaintiff. (Compl. ¶ 27; Answer ¶ 27; Appeal Form.) Defendants themselves note only that Defendant English was not "not directly involved in the incident" and "did not effectively handle the Baker and Dalie incident directly"–not that Defendant English was not involved at all. (Appeal Form.)

In light of Defendant English's involvement, however minimal, Plaintiff maintains that his position on the decision-making board nullified the board's impartiality. He buttresses this position with the Prison's own policy, which requires that the hearing panel consist of "three staff members representing both the Security and Treatment departments" and explicitly states that "[n]o member of the board will have been involved in the incident to insure [sic] impartiality." (Prison Manual, Inmate Discipline, at 2.) The Court agrees that a reasonable jury

17

could find the Prison violated its own policy and that Plaintiff was effectively denied an impartial decision-making panel here.

Finally, questions of genuine material fact remain as to Defendant Voss' role in the incident, considering the contradictions between Defendant Voss' statements in his incident report, filed immediately after the fight, and both Voss' and inmate Baker's later statements under oath concerning who initiated the Prison fight. (Citation; Baker Test. 57:22-58:20, 58:24-25, 59:4-7, 68:4-6; Voss Prelim. Hr'g 11:4-5, 12:3-4; Voss Test. 36:2-13; Baker Prelim. Hr'g 54:1-2.) Defendant Voss himself testified that he was unable to witness the entire altercation, based on his position on the Prison floor and the duties required of him at that moment. (Voss Test. 73:13-74:11.) A reasonable jury could also conclude that Defendant Voss' conflicting testimony indicated a punitive intent and an effort to ensure a guilty finding at Plaintiff's administrative hearing. (Appeal Form.)

## V. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has adduced sufficient evidence from which a reasonable jury could find in his favor with respect to both his substantive and procedural due process claims under the 14th Amendment. Accordingly, the Court will deny summary judgment to Defendants.

An appropriate Order follows.

2:07-cv-02097-CDJ
THOMAS C. ABRAHAMSEN
SOLICITOR'S OFFICE  tabrahamsen@chesco.org
2 N. HIGH ST.
SUITE 150
WEST CHESTER PA 19380-0991

2:07-cv-02097-CDJ

ANDREW JAMES KENIS  
DUANE MORRIS, LLP  
ONE LIBERTY PLACE  
30 SOUTH 17th STREET  
PHILADELPHIA PA 19103

215-979-1020  
AJKENIS@DUANEMORRIS.CO